IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


CHRISTOPHER K. LESTER,            )
                                  )
            Plaintiff,            )
                                  )
    v.                            )          1:13CV759
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social     )
Security,                         )
                                  )
            Defendant.            )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff Christopher K. Lester ("Plaintiff") initiated
this action pursuant to Section 1631(c)(3) of the Social
Security Act (the "Act"), codified as amended at 42 U.S.C.
§ 1383(c)(3), to obtain review of a final decision of the
Commissioner of Social Security ("Commissioner") denying his
claim for Supplemental Security Income ("SSI") under Title XVI
of the Act.

Plaintiff subsequently filed a Motion for Judgment
Reversing the Decision of the Commissioner (Doc. 13), and the
Commissioner has filed a Motion for Judgment on the Pleadings
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure
(Doc. 15).  Plaintiff has responded to the Commissioner's
motion.  (Doc. 17.)  The administrative record has been

certified to this court for review.[1]

For the reasons set forth below, the Commissioner's motion will be granted, Plaintiff's motion will be denied, and this case will be dismissed with prejudice.

## I.  <u>BACKGROUND</u>

Plaintiff received SSI benefits as a minor under Title XVI of the Act based on disability. (Tr. at 13.)  After attaining the age of eighteen, and in accordance with the governing law, Plaintiff was reevaluated to determine whether he qualified to receive SSI benefits as an adult.  (<u>Id.</u> at 13, 60-65.)  He was denied benefits initially and upon reconsideration.  (<u>Id.</u> at 13.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and after the hearing, the ALJ determined[2] that

_____

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer (Doc. 9) and electronically (Docs. 10, 11).

[2] "The Commissioner uses a five-step process to evaluate disability claims." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy." <u>Id.</u>  A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. Even though Plaintiff received SSI as a minor, his application was to be reviewed as if he were an adult applying for benefits for the first time. <u>See</u> 42 U.S.C. § 1382c(a)(3)(H).

Plaintiff's disability ended on May 1, 2009. (Id.) Therefore, because Plaintiff had not been disabled since that date, he was not eligible for SSI benefits.

In her decision, the ALJ determined that Plaintiff had a severe impairment, namely, mild intellectual disability.[3] (Id. at 15.) The ALJ recognized that Plaintiff had been diagnosed with and treated for attention-deficit hyperactivity disorder ("ADHD"), depression, anxiety, Tourette syndrome, acid reflux, and cervicalgia, but these conditions were not "severe" impairments. (See id. at 16.) Although Plaintiff's intellectual disability "more than minimally impacts [Plaintiff's] ability to perform work-related functions," the ALJ found that Plaintiff's impairments, "considered singly and in combination, [did] not meet or medically equal" the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Id. at 15, 17.) The ALJ specifically considered

---

[3] Effective September 3, 2013, the Agency replaced the term "mental retardation" in Listing 12.05C with "intellectual disability" since the former term "has negative connotations, has become offensive to many people, and often results in misunderstandings about the nature of the disorder and those who have it." Change In Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46,499 (Aug. 1, 2013) (to be codified at 20 C.F.R. pts. 404 and 416). Unless quoting another source or authority, the court uses the updated term here and recognizes that this change does not alter any of the arguments made by either party.

Listings 12.02, 12.03, 12.04, 12.05, and 12.06, defining various mental disorders.  (See id. at 17.)

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC")[4] to perform a full range of work at all exertional levels but with certain non-exertional limitations, including that Plaintiff can follow only short, simple instructions; can make simple work-related decisions; can tolerate few workplace changes; can tolerate occasional interaction with the general public, coworkers, and supervisors; should not be required to read instructions or write reports; and should not be required to perform mathematical computations. (Id. at 21.)  Based on Plaintiff's age, education, and RFC, the ALJ determined that there were significant numbers of jobs in the national economy that Plaintiff could perform. (Id. at 23-24.)  As a result, Plaintiff had not been disabled since May 1, 2009, and was not entitled to SSI benefits. (Id.)

On July 23, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006) (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).

Commissioner's final decision for purposes of review. (Id. at 1-5.)

## II. __ANALYSIS__

Plaintiff raises multiple overlapping arguments to support his contention that the ALJ "erred by finding that Plaintiff does not meet Listing 12.05(c)." (Pl.'s Br. Supp. Mot. to Reverse the Decision of the Commissioner ("Pl.'s Br.") (Doc. 14) at 2.) However, as explained below, the ALJ's decision was rendered according to the governing law and is anchored in substantial evidence.

Listing 12.05 provides the criteria by which the ALJ could find that someone has an "intellectual disability." The Listing defines "intellectual disability" as:

> [S]ignificantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

Where, as here, the paragraph C severity criteria are at issue, the Fourth Circuit has described the first required showing - that is, deficits in adaptive functioning initially manifested during the developmental period — as "Prong 1." Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).  The Prong 1 diagnostic criteria for a Listing 12.05 intellectual disability includes two components — deficits in adaptive functioning and an onset before age 22 — that must both be satisfied in order for the Listing to apply.  Id. at 475.

The Fourth Circuit has broken the conjunctive paragraph C requirements into two prongs with "Prong 2" requiring a valid verbal, performance, or full scale IQ of 60 through 70, and "Prong 3" requiring a physical or other mental impairment imposing an additional and significant work-related limitation of function.  Id. at 473.  The ALJ found that both Prongs 1 and 2 had been met (see Tr. at 17), and the parties do not contest these findings. (Pl.'s Br. (Doc. 14) at 5; Commissioner's Mem. in Supp. of Mot. for J. on the Pleadings ("Commissioner's Mem.") (Doc. 16) at 7.)  Therefore, the only issue for this court to determine is whether there is substantial evidence to support the ALJ's determination that Plaintiff did not have a "physical or other mental impairment" that imposes "an additional and

significant work-related limitation of function." (See Pl.'s Br. (Doc. 14) at 5.)

The regulations do not explicitly define an "additional and significant work-related limitation of function," but such an impairment does not have to be disabling in itself. See Branham v. Heckler, 775 F.2d 1271, 1273 (4th Cir. 1985); see also Rice v. Astrue, Civil Action No. 6:07CV016, 2008 WL 2233967, at *5 (W.D. Va. May 30, 2008). In fact, the Fourth Circuit has held that "an illness or injury imposes a significant limitation when its effect on the claimant's ability to work is more than slight or minimal." See Pullen v. Bowen, 820 F.2d 105, 109 (4th Cir. 1987); see also Rice, 2008 WL 2233967, at *5 (collecting cases).

The introductory paragraph to section 12.00 of the Listing Requirements also equates the term "significant work-related limitation" for purposes of 12.05C to the definition of severe impairment used at step two of the sequential analysis employed in a disability determination:

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are

-7-

> unable to do your past work because of the unique
> features of that work.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A).  Prong 3 of

12.05C, therefore, "closely parallels a finding of a severe

impairment" and is satisfied if a limitation is more than slight

or minimal.  See Moon v. Astrue, Civil Action No. 6:08cv40016,

2009 WL 430434, at *4 (W.D. Va. Feb. 20, 2009).

In her decision, the ALJ found that Plaintiff's mild

intellectual disability was a severe impairment. (Tr. at 15.)

The ALJ also noted that Plaintiff had been diagnosed and treated

for "attention-deficit hyperactivity disorder, depression,

anxiety, and Tourette syndrome."  (Id. at 16.)  The ALJ

concluded, however, that "these conditions are not severe

because they do not result in an additional and significant

work-related limitation of function."  (Id.)  Consequently,

Plaintiff could not prove that he met Prong 3 of Listing 12.05C.

In making this finding that Plaintiff's other impairments

were not "additional and significant work-related limitation[s]

of function," the ALJ relied on medical evidence which indicated

that Plaintiff had received little treatment since his 18th

birthday, and that his symptoms responded well to medication.

(Id. at 17-19.)  Specifically, the record shows that Plaintiff

was taking medication for his symptoms in November 2008, but

that he had ceased taking medication at the time of his

consultative examinations in April 2009.  (Id. at 18-19, 162-65,
171.)  Plaintiff sought treatment again in October 2010.  (Id.
at 18, 202.)  At that time, Plaintiff's primary care physician
diagnosed him with ADHD, a depressive disorder, and an anxiety
state, along with acid reflux and neck pain.  (Id. at 18, 202-
06.)  Plaintiff was prescribed Strattera and Celexa, which
stabilized his depressive disorder and anxiety.  (Id. at 18,
197, 201, 206.)  During examinations, Plaintiff also answered
questions appropriately and his judgment was normal.  (Id. at
18, 200, 205.)

Additionally, the ALJ noted that she had considered the
psychological reports of consulting examiners Rebecca J.
Kincaid, M.S., and Tom Keane, Ph.D., (id. at 18-19, 166-72), and
the report of the physical consultative examiner, Charles S.
Betts, M.D. (Id. at 19, 173-76.) The ALJ noted further that the
non-examining state agency examiner, Sharon J. Skoll, Ph.D.,
concluded that Plaintiff's mental impairments did not meet or
qualify for a listing.  (Id. at 21, 178-83.)

Plaintiff contests the ALJ's finding as to Listing 12.05C
in several ways, and this court addresses each argument below.
However, after reviewing the pleadings of the parties, the ALJ's
decision, and the administrative record, this court finds that
these arguments are without merit.

**A.  Other Mental Impairments as Severe Impairments**

In contesting the ALJ's finding that Plaintiff's other impairments were not "additional and significant work-related limitation[s] of function" for the purposes of Listing 12.05C, Plaintiff contends the medical evidence establishes that his combined mental impairments, that is, ADHD, depression, anxiety, and Tourette syndrome, were severe and are an "additional and significant work-related limitations of functioning." (Pl.'s Br. (Doc. 14) at 6-9.)  This court finds no error in the ALJ's analysis based on this argument.

The Commissioner uses the same test for determining whether an impairment is "an additional and significant work-related limitation" as when the Commissioner determines whether an impairment is "severe," that is, by determining whether the impairments or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) and 416.920(c); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.  "If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe . . . ." Social Security Ruling 96-3p, Policy Interpretation Ruling Titles II and XVI: Considering

Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe, 1996 WL 374181 (July 2, 1996) ("SSR 96-3p").

Plaintiff does not argue that his other mental impairments, alone, constitute a severe impairment. (See Pl.'s Br. (Doc. 14) at 8-9; Pl.'s Resp. (Doc. 17) at 2.) Instead, Plaintiff contends that the ALJ did not consider whether his other impairments, in combination, constitute a severe impairment. (See id. at 8-9, 12.) This argument is not persuasive.

The ALJ's analysis spends close to five pages evaluating the allegations of Plaintiff and his mother as they relate to his medical records and the evaluations of the consultative evaluators, and the first sentence in this analysis indicates that the ALJ was considering Plaintiff's mental limitations singly and in combination. (Tr. at 17-21 ("The claimant's mental impairments, considered singly and in combination . . . .").) Therefore, this court finds that the ALJ was in fact considering all of Plaintiff's mental impairments in combination to determine whether they were severe and whether they constituted an additional and significant work-related limitation of function.

Furthermore, reviewing the record, the ALJ's conclusion that the combination of the other mental impairments was not

severe is based on substantial evidence.  As explained by the ALJ and discussed further below, the medical record here demonstrates that Plaintiff received little treatment for his other mental impairments, that the treatment he did receive was both conservative in nature and effective in treating his symptoms, and that no treating, examining, consulting, or non-examining physician opined that he met the requirements of 12.05C.  Moreover, the ALJ properly acknowledged that Plaintiff had been treated for ADHD, depression, anxiety, and Tourette syndrome, but she found that they were not severe impairments. A mere diagnosis of a condition is insufficient to prove disability, and Plaintiff has failed to demonstrate any additional significant limitation in his ability to work.  See Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986).  As the ALJ stated, "This evidence supports a finding that the claimant's depression, anxiety, attention-deficit hyperactivity disorder, and Tourette syndrome would not result in additional and significant work-related limitations of function.  (Tr. at 18.)

The record demonstrates that Plaintiff has only sporadically been medicated for his mental impairments, supporting the ALJ's determination that Plaintiff's other mental impairments are not severe.  (See id. at 162-64, 168, 171, 199

(noting that Plaintiff has been receiving or not receiving medication for his mental health issues over time).)  For example, Plaintiff was not on any medication for his mental impairments at the time of his consultative examinations in April 2009, at which point he demonstrated no tics and denied depression.  (Id. at 169, 171, 175.)  Such sporadic mental health treatment, combined with a lack of demonstrated limitations of function, shows that a mental impairment is not severe.  See, e.g., Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir. 1997).  Plaintiff contends that it was improper for the ALJ to rely on this lack of treatment as a reason for finding that an impairment is not severe.  However, numerous courts have found that the ALJ may infer that the mental impairment did not cause any workplace limitations if there is a lack of medical treatment for a mental impairment.  See Gustafson v. Colvin, No. 1:10CV833, 2014 WL 791847, at *5 (M.D.N.C. Feb. 25, 2014) (upholding ALJ's finding of non-severity based in part on a lack of mental health treatment during the relevant time period); Mabe v. Colvin, No. 4:12-cv-00052, 2013 WL 6055239, at *5-6 (W.D. Va. Nov. 15, 2013) (noting that claimant's minimal mental health treatment supported finding that the claimant did not have a severe mental impairment); Collier v. Astrue, No. 7:11-CV-68-D, 2012 WL 3095099, at *6 (E.D.N.C. June 22, 2012)

("The fact that plaintiff's depression appears to have been controllable by medication provides further support for the ALJ's finding that this aspect of her mental impairments was nonsevere during the relevant period.").[4]

Likewise, Plaintiff's activities of daily living addressed by the ALJ (Tr. at 19-20) indicate that Plaintiff's other mental impairments are not severe.  Plaintiff testified that he performed chores around the house, including laundry, vacuuming, and washing dishes.  (Id. at 35.)  He also stated that for two months he helped his uncle at his uncle's flea market stand by loading and unloading merchandise, displaying merchandise, and tending a stand while his uncle was away.  (Id. at 38-41.)  He also helped provide some care for both his sisters, one of whom was an infant.  (Id. at 43-44.)  His mother reported that he could prepare light meals using the microwave, count change, and play video games.  (Id. at 134.)

---

[4] Plaintiff contends further that the ALJ erred by misapplying Social Security Ruling 85-28 ("SSR 85-28") when determining that Plaintiff's other mental impairments were not severe, as "a finding of non-severity can be made only if said evidence establishes only a slight abnormality or combination of slight abnormalities that have no more than a minimal effect on the claimant's mental ability to perform basic work activities." (Pl.'s Br. (Doc. 14) at 10-12.)  Plaintiff claims that by considering frequency of treatment, the ALJ did not make this requisite finding.  (Id. at 12.)  However, the analysis contained in this section indicates that the ALJ examined Plaintiff's ability to do basic work activities by examining his treatment history in conjunction with the medical evidence and activities of daily living.

During his consultative examination, Ms. Kincaid observed that Plaintiff was polite, did not display any tics, displayed judgment requisite for avoiding danger, and denied depression or suicidal ideation.  (Id. at 169.)  Similarly, Dr. Betts noted that Plaintiff was alert and oriented, and answered questions appropriately with appropriate affect and mood during the medical consultative examination.  (Id. at 174.)  Also, Dr. Betts did not detect any mood swings or changes in affect during the examination.  (Id. at 175.)  Dr. Keung W. Lee, Plaintiff's treating physician, prescribed Plaintiff medication for his ADHD, depression, and anxiety (id. at 206), and later noted that his condition was stable. (Id. at 201.)  Furthermore, both Plaintiff and his mother stated that the medication helped. (Id. at 51-52, 135.)  Where, as here, an ailment is controlled by medication such that it does not cause work-related limitations, it is not severe.  See Gross, 785 F.2d at 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). The ALJ considered all of this evidence in reaching a decision. (See Tr. at 17-19.)

Also, the mere fact that Plaintiff was prescribed medication is not evidence that his mental impairments were severe.  See Brewton v. Astrue, No. 1:09cv188, 2010 WL 3259800, at *8 (W.D.N.C. July 26, 2010) (holding that "prescriptions [of

psychiatric medicine] in and of themselves were not sufficient to establish that her depression was severe in the absence of evidence showing that the impairment impacted her ability to perform basic work activities") (citing Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003)).  In the end, the conservative treatment — that is, the medication that was prescribed and its result (Tr. at 201-06) — shows that Plaintiff's mental impairments caused less than significant limitations.  See, e.g., Dettinger v. Astrue, No. 3:09cv401, 2010 WL 2653652, at *8 (E.D. Va. June 30, 2010) (affirming ALJ decision that post-traumatic stress disorder was not severe and disabling where only conservative treatment was prescribed and the record lacked evidence of the condition's limiting effects on the claimant).

Therefore, the ALJ's finding that Plaintiff's other mental impairments do not constitute a severe impairment, whether singly or in combination, is supported by substantial evidence.

### B.  Considering Other Mental Impairments Combined with Mild Intellectual Disability

Plaintiff also contends that the ALJ "failed to consider the combined effect of Plaintiff's other mental impairments with mild mental retardation" in determining that Plaintiff did not have an additional and significant work-related limitation of function.  (See Pl.'s Resp. (Doc. 17) at 4-5 (citing 20 C.F.R. § 416.923; SSR 85-28, Program Policy Statement Titles II and

XVI: Medical Impairments that are not Severe, 1985 WL 56856
(1985)).)  This argument too lacks merit.

Plaintiff's argument on this claim differs from his first
argument in that Plaintiff suggests that, in evaluating whether
Plaintiff meets the requirements of Listing 12.05C, the ALJ
should have recognized that Plaintiff has an intellectual
disability by finding that his other mental impairments,
combined with his intellectual disability itself, meets the
definition of an additional and significant work-related
limitation of function.

However, Plaintiff's argument is belied by the
Commissioner's explanation of Listing 12.05C after its latest
revision.  When publishing the revised version of 12.05C, the
Commissioner explained it was always "intended that there be a
separate physical or mental impairment apart from the claimant's
mental retardation" in order for the ALJ to find that there is
an "additional and significant work-related limitation of
function."  Revised Medical Criteria for Evaluating Mental
Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746,
50,772 (Aug. 21, 2000) (to be codified at 20 C.F.R. pts. 404 and
416) (emphasis added). Courts have similarly applied this logic,
noting that the "finding of severity of work-related limitation
of function . . . must be exclusive of the mental impairment

-17-

finding." Maybank v. Astrue, C/A No. 4:08-0643-MBS, 2009 WL
2855461, at *13 (D.S.C. Aug. 31, 2009); see also Banks v.
Massanari, 258 F.3d 820, 824 (8th Cir. 2001).

Based on this guidance from the Social Security
Administration and other courts, this court finds that the ALJ
was not required to determine whether Plaintiff's other mental
impairments, combined with his intellectual disability, would
have been an additional and significant work-related limitation
of function.  Plaintiff cites Luckey v. U.S. Dep't of Health &
Human Servs., 890 F.2d 666, 668-69 (4th Cir. 1990) (per curiam),
to challenge the ALJ's finding that Plaintiff's impairments did
not meet or equal a listing. (Pl.'s Resp. (Doc. 17) at 7-8.)  In
Luckey, the Fourth Circuit found that the claimant had met
Listing 12.05C's "additional and significant work-related
limitation of function" requirement.  See Luckey, 890 F.2d at
669.  However, in Luckey, the claimant had a severe combination
of impairments, including back pain, controlled diabetes, a
vision problem, and a history of ulcers, which prevented him
from completing the duties of his previous occupation, namely,
lifting heavy objects.  Luckey, 890 F.2d at 669.  The claimant's
severe combination of impairments were separate and apart from
the claimant's intellectual disability.  By contrast, Plaintiff
is attempting to argue in this case that his other mental

impairments combined with his intellectual disability creates a severe impairment.  Therefore, <u>Luckey</u> is not on point and is not controlling or persuasive in this case.

Despite not being required to consider the combination of Plaintiff's other mental impairments and his intellectual disability, the ALJ specifically found, "[e]ven if one considers the claimant's nonsevere mental impairments in combination with his mental retardation, his condition would not meet the requirements of listings 12.02, 12.03, 12.04, 12.05, and 12.06." (Tr. at 19.)  Consequently, the contention that the ALJ failed to consider the combined impact of all of Plaintiff's mental impairments has no merit.  <u>See, e.g.</u>, <u>Bledsoe v. Barnhart</u>, 165 Fed. Appx. 408, 411 (6th Cir. 2006).

### C.   **Dr. Skoll's Opinion**

Plaintiff further asserts that the ALJ's finding that Plaintiff's severe impairment did not meet or equal a listing requirement is not supported by evidence of record.  (Pl.'s Br. (Doc. 14) at 12-13.)  Specifically, Plaintiff contends that the ALJ failed to recognize that a non-examining state agency medical consultant, Dr. Sharon J. Skoll, opined that the combination of Plaintiff's multiple mental impairments were

severe and resulted in numerous work-related limitations of function.[5]  (Id. (citing Tr. at 15-21).)

However, Dr. Skoll in fact said the opposite. (Tr. at 182.) Within her Psychiatric Review Technique form, Dr. Skoll indicated that Plaintiff's mild intellectual disability was a medically determinable impairment that did "not precisely satisfy the diagnostic criteria above."  (Id.)  One criteria Dr. Skoll thought Plaintiff did not meet was "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Id. (emphasis added).) Without finding this criteria, Dr. Skoll could not conclude, as Plaintiff suggests, that Plaintiff had met the requirements of 12.05C.  See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("[T]o show that his impairment matches a listing, it must meet all of the specified medical criteria.")

---

[5] Plaintiff also contends that the ALJ erroneously attributed a statement to the psychological consultants that Plaintiff's "symptoms were well controlled in spite of the fact that he was not taking any medications." (Pl.'s Br. (Doc. 14) at 12 (citing Tr. at 19).)  However, the ALJ never attributed any such statement to the consultants, but rather concluded that the reports these consultants generated "indicated" that Plaintiff's symptoms were well controlled without medication.  The report at issue reasonably bears this interpretation, as does the record as a whole, and thus, this finding is supported by substantial evidence.  (See, e.g., Tr. at 168-71 (stating that Plaintiff denied depression and displayed no tics despite having not been on medication for years).)

Therefore, while Dr. Skoll opined that Plaintiff had the following medically determinable impairments: ADHD, R/O Paranoid Schizophrenia or Schizoaffective Disorder, and Social Anxiety, (Tr. at 179-80, 183), she did not believe that those impairments imposed "an additional and significant work-related limitation of function."  As such, Dr. Skoll did not believe that Plaintiff satisfied Listing 12.05C.[6]  (Tr. at 182.)  Accordingly, the ALJ's finding is supported by Dr. Skoll's opinion rather than undercut by it.

**D.    Interplay of Step Two Analysis and Mental RFC Finding**

Plaintiff uses the ALJ's own mental RFC determination as a means of undermining her determination that Plaintiff does not suffer from additional and significant work-related limitations of function.  (Pl.'s Br. (Doc. 14) at 14-15.)

In support of this argument, Plaintiff points to Social Security Ruling 85-16 ("SSR 85-16"), which provides:

---

[6] Plaintiff's Response to the Commissioner's Motion further contests this interpretation of Dr. Skoll's opinion. Specifically, Plaintiff points to the fact that in evaluating his limitations, Dr. Skoll cites the listing codes of Plaintiff's mental impairments.  (Pl.'s Resp. (Doc. 17) at 7.) According to Plaintiff, this "reveal[s] that [Dr. Skoll] considered the numerous work-related mental limitations to be the product of all of Plaintiff's mental impairments combined." (Id.)  Again, however, while Dr. Skoll may have identified various mental impairments, she did not conclude that Plaintiff satisfied Listing 12.05C, which means that she concluded that Plaintiff had not demonstrated that his various mental impairments constituted an additional and significant work-related limitation of function.

The evaluation of intellectual functioning by a program physician, psychologist, ALJ, or AC member provides information necessary to determine the individual's ability to understand, to remember instructions, and to carry out instructions. Thus, an individual, in whom the only finding in intellectual testing is an IQ between 60 and 69, is ordinarily expected to be able to understand simple oral instructions and to be able to carry our these instructions under somewhat closer supervision than required of an individual with a higher IQ. Similarly, an individual who has an IQ between 70 and 79 should ordinarily be able to carry out these instructions under somewhat less close supervision.

SSR 85-16, Program Policy Statement, Titles II and XVI: Residual Functional Capacity for Mental Impairments, 1985 WL 56855 (Jan. 1, 1985). Plaintiff argues that the ALJ must have recognized an additional severe limitation beyond mild intellectual disability because the mental RFC calculation includes limitations not normally associated with intellectual disability, including an inability to tolerate workplace changes; an inability to interact with the general public, coworkers, and supervisors; and an inability to perform mathematical computations. (Pl.'s Br. (Doc. 14) at 14-15.)

This argument is not persuasive. First, as noted, the ALJ's mental RFC calculation limited Plaintiff to follow only short, simple instructions; make simple work-related decisions; tolerate few workplace changes; tolerate occasional interaction with the general public, coworkers, and supervisors; should not be required to read instructions or write reports; and should

not be required to perform mathematical computations. (Tr. at 21.) In articulating Plaintiff's mental RFC as such, the ALJ was meeting her obligation under Social Security Ruling 96-8p ("SSR 96-8p") to formulate an RFC with due consideration to all of Plaintiff's impairments, including those that are not severe. See SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). Moreover, there are numerous situations where an RFC may have limitations that appear to be accommodating impairments that the ALJ finds to be nonsevere. See, e.g., Timmons v. Astrue, 360 Fed. Appx. 984, 987 (10th Cir. 2010) (rejecting argument that RFC prohibiting exposure to respiratory irritants undermined earlier 12.05C finding that claimant's asthma imposes only minimal limitations); Doyle v. Astrue, No. CIV-10-795-STE, 2011 WL 3299088, at *5-6 (W.D. Okla. Aug. 1, 2011) (concluding that mental RFC imposing social restrictions did not undermine 12.05C analysis concluding that claimant had no additional severe impairment).

Second, nothing in SSR 85-16 states that a limitation to simple instructions and close supervision are the only

limitations that could be caused by an IQ score of 70. See SSR 85-16, 1985 WL 56855, at *3. Therefore, including other limitations in the RFC without finding certain impairments as severe does not conflict with SSR 85-16. Plaintiff has offered no meaningful support for the proposition that it was legal error for the ALJ to conclude that a person with mild intellectual disability could also have an RFC with social or stress-related limitations, without any other corresponding severe impairments.

In a permutation of this argument, Plaintiff again references Dr. Skoll's mental RFC assessment. Plaintiff points out that Section I of the Mental RFC Assessment worksheet completed by Dr. Skoll indicates that Plaintiff was "moderately limited" in ten of twenty categories and "markedly limited" in his ability to interact appropriately with the general public. (Pl.'s Br. (Doc. 14) at 8 (citing Tr. at 192-93).) However, Dr. Skoll's Section I findings in her mental RFC worksheet were preliminary to her Section III conclusions that Plaintiff could carry out simple, routine, repetitive tasks in a low stress, low production environment, with limited social interaction, (Tr. 194). See, e.g., Hayes v. Colvin, No. 1:10CV379, 2013 WL 2456111, at *4-5 (M.D.N.C. June 6, 2013) (concluding that

Section III rather than Section I constitutes the RFC assessment).

In any event, this argument fails for the same reasons set forth above, namely, that Dr. Skoll specifically concluded that Plaintiff did not satisfy the 12.05C criteria.  See, e.g., Doyle, 2011 WL 3299088, at *5-6.

**III.  CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner (Doc. 13) is **DENIED,** that the Commissioner's motion for judgment on the pleadings (Doc. 15) is **GRANTED,** and that this action is **DISMISSED WITH PREJUDICE.**

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 30th day of March, 2015.

_____
                    United States District Judge